Our next case is Mayorga v. Atty Gen USA Mr. McFarlane, welcome. Thank you, Your Honor, and may it please the court. My name is Tad McFarlane and I represent the petitioner in this case, Mr. Rene Montez Mayorga. I'd like to reserve three minutes of my time for rebuttal. Granted. In November of 2010, Mr. Mayorga pled guilty to one count of engaging in the unlicensed business of firearms dealing. We don't have any facts about that. He came from El Salvador? He did come from El Salvador. There was a civil something happening in El Salvador? Yes, there was a civil war at the time that Mr. Mayorga left El Salvador in the late 1980s. He was 15. Yes. And they're challenging him of some of the things he talked about when he had been eight years old that he put into the affidavit. Yes. Although, actually, the issues that we're going to be discussing today do not concern Mr. Mayorga's circumstances back in the 1980s. The only issue before us is the CIMT issue, correct? That is correct, Your Honor. Why should we get to that? You've conceded that your client is removable on the other ground, correct? Yes, well, we have not argued that in this case. I don't know whether Mr. Mayorga might be able to contest that in some future proceeding, but for the purposes of this argument... Why shouldn't he contest? He's here illegally. Yes, exactly. I do not argue that in our opinion. There's a collateral consequence that flows from a CIMT determination, and that is a lifetime ban on admissibility, correct? That is right, Your Honor. And, in fact, the Third Circuit just had occasion to render a decision on this exact issue with almost exactly analogous facts. Is that Judge Fuentes' opinion? Yes. I was on that panel. You were on that panel? Yes, this is the McCuana opinion. All right, but here's my concern. Why can't you raise that 10 years from now? Well, the problem with that is that, you know, it wouldn't be a whiteness issue. It would be a staleness issue. Mr. Mayorga only has a limited amount of time to appeal a determination of removability to the Third Circuit. So he's had to appeal... Well, we know he's removable for the other ground, but I want you to play out what might happen in the future. Eleven years from now, he seeks to re-enter, right? The government, your friend there, Mr. Nicastro, I think is going to tell us, well, he's not going to be allowed to do that because of the CIMT adjudication. And my answer to that is the your client from trying to come back in because it was not essential to the judgment. Is that not one of the requisites of collateral estoppel, that the adjudication be essential to the judgment? My understanding is that the immigration judge's determination, as affirmed by the BIA, would be included, you know, either collateral estoppel or raised judicata effect in that future immigration proceeding. There have been numerous cases that have held that these types of determinations in the adjudicatory setting are accorded a claim preclusive effect. Only if they're essential to the judgment, right? Can you show me a case where it wasn't essential to the judgment like this? I, you know, I don't, I'm unaware whether there is any case to that effect. Well, this is really new territory, though. Judge Easterbrook's opinion in Alley and Judge Ambrose's opinion in Totem are really about all we have to go on. And the issue, the government has never taken a position on the CIMT issue. I'm going to ask him about it. Has never taken a position on the CIMT, in spite of the fact that what we granted is stay in removal. We directed that the government take a position and we directed that they brief Alley and Totema. And they basically have said, well, it's not necessary that we do so. I'm going to ask the government today, what is your position? Because we're in the blind here. Well, I am fully prepared to address the merits issue if the court would like some additional advisement on that. You're pro bono, by the way. I want to point that out. Yes, I am. Thank you. Yes, yes. You're welcome and thank you. I was going to wait until the end of argument. I don't want you to think that, I don't want you to think Judge Slover is more polite than I am. And your brief is very good, too. Yes, thank you. But having congratulated you, I'm going to ask you to take a seat and we're going to reserve your time. Because I think it would be most helpful if we could focus on this issue with Mr. Nicastro. You're not going to lose any of your time. Thank you. All right. This is unusual, you have to know. Mr. Nicastro, are you going to take the position that 11 years from now, Mr. Mayorga cannot seek reentry because the CIMT determination collaterally stops him from doing so? He can seek reentry. He would probably need a waiver of that, as both counsel agree that he's eligible to get a waiver. But forget the waiver thing. He needs an attorney general approval, right? Yeah, so one of his agents to approve that waiver at the consular office. Well, not always. The attorney general doesn't act on his own. Right, the consular's office overseas would have to. I'm asking you, why don't we just decide this case now and say, in a short opinion, that Mr. Mayorga is not barred under the CIMT determination because that determination by the agency was not essential to the judgment? And that's wrong. Well, it may have been or may not have been, but we don't need to get into it, because who knows whether he even seeks reentry 11 years from now, who knows where he finds himself. That's exactly right, Your Honor. This Court could do that. It could very well do that. That's what I said before. On March 14th, we entered an order granting stay of removal and directing the government, directing the parties, to brief this issue as to whether the crime of which he was convicted constitutes a CIMT and to brief Toteman Ali, and you didn't do it. What is the government's position on that? Well, the government's position on that is exactly what we put in our brief. You didn't. You said it's not necessary. You did not take a position. Where in your brief did you take a position? We did not take a position, and the reason we did, well, the reason we did is the Court's order said we can address any other issues we deem necessary. But you were directed. Yes, Your Honor. The word in our order was we direct you. Yes, Your Honor, but the government's answer to that is that the Board does not address the CIMT finding. There's nothing in the decision. The IJ did in the Board. The IJ did to a certain extent, and the Board didn't at all because it wasn't raised to that. Right, which is the reason I'm suggesting to you, I think you're agreeing, that the prudent course here is for us to hold that the CIMT issue is not preclusive against Mr. Mayorga should he, 11 years from now, seek to reenter the country. Yes, that's correct, Your Honor. What is your position on the issue? Do you think this crime constitutes a CIMT? This is what we asked you to tell us. Yes, Your Honor. Because if you were to agree with your friend across the aisle that it doesn't, then we can all go home, right? Well, I completely agree, but the government obviously Wait a minute. What do you agree? What is your position on whether this crime constitutes, what is it, specifically? The government would have liked to see the Board address this issue. You are the government. It's a difficult issue, Your Honor, which is why What is your position? My own personal position? No, the government's position. We don't have one because the Board You don't have a position. Your Honor, if I may, Your Honor This guy is being mandatorily detained. He's still in the Essex County Jail, I believe. He's been detained for three years. He's in Alabama now, Your Honor. Has he been moved? Yes, he has been moved. Because when he filed the state of removal, that was the Essex County Jail. All right. He also has a motion to reopen that was just denied in front of the Board. Why is he mandatorily detained? A bond was denied because this is a CIMT, the IJ says. No, Your Honor, it's post-removal, so he's getting set for removal. It's not pre-removal, so it's not a mandatory He was previously detained for that reason, but now he's detained because of the order for removal. Yes, Your Honor. And if I may, I'll explain. Maybe it's not justifiable to the Court, but I can at least explain the government's position. This Court has unanimously said, continuously, that it owes deference to the Board's definition of a CIMT and its interpretation in various cases, in Knapp, in Totema, in some of the other cases. But why should we defer to the BIA on a legal issue which goes across the Board? I don't understand. What does the BIA know that we, as a Court of Appeals, don't know? Well, Your Honor, within that term of crime involving moral turpitude, which is in the INA, this Court has said that it owes deference to the Board's definition of that term. Under this statute, what has the Board said? It hasn't said anything on the statute. All right. It hasn't spoken to this issue. You haven't spoken to this issue. You being the Attorney General. You being the government. Well, let me try to help Mr. Nicastro a little bit. And Judge Barry may disagree, but as I understand your position, correct me if I'm mistaken, your position is that the government writ large hasn't said much about this because the BIA hasn't given the guidance that the lawyers could then come into court and argue. Is that where you find yourself standing? That's correct, Your Honor, because we don't have a reasoned Board decision at all to say, all right, had they founded a CIT, it's possible they may not find a CIT, given this Court's decision in Totema and also Judge Eastbrook's decision in Ali. It's very possible that if they looked at had it been raised in front of them, which it was not. And we could, in theory, we have jurisdiction to write an opinion that goes through the entire analysis, that this is a regulatory crime, it's not a CIMT, it's malum prohibitum, not malum in se, et cetera, et cetera. But I'm asking why would we do that if the BIA chose not to address it and it might be a moot point that never comes up. That's correct, Your Honor. But all of that depends upon the government not whipsawing Mr. Mayorga 11 years from now and saying, aha, that question has been asked and answered, look at the immigration judge's opinion, collateral estoppel. But I believe you've already conceded that that's not the case. But couldn't we send it back to the BIA and get their reasoned remand and get their reasoned analysis on this particular statute? You couldn't. That's part of what, that was part two of our brief. And then if you find that it's necessary. Well, that was part, that was all you, you said send it back or either, you know, you never. Well, our initial argument was that the court ought not to reach, it doesn't have to reach that issue because it's not necessarily the results. That's right, even though we had directed you that you needed to. Because he's here illegally. He's here illegally and he's ineligible for relief on a separate ground unrelated to the CIMT. So why, so he should be shipped out on that ground, right? That's your position. Why do we have, why are we doing, why are we talking about this? Yes, it's an effective removal order and he's ineligible for any relief. So we can wait for a case where the only reason someone's going to be removed is because of this CIMT determination, then we can write a nice long opinion that analyzes what the BIA says about that. It could, or it could be he's ineligible for relief because of this finding. And then the collateral consequences under some of your decisions may take effect. But here, he just doesn't, whatever this court decides on the CIMT issue, if it reached the CIMT issue, if it reached it, would have no bearing on his removability and no bearing on his relief. But he wouldn't be, if we were to, if we were to reach the issue, and candidly, I think it seems on the merits, pretty clear cut, but to me, but if we were to reach the issue, then there would not be a lifetime ban on readmission and we'd know. And he wouldn't have the collateral consequences. There would be, and he would, that's right. I mean, we could reach that now. Yeah, I'm sure he's removable on the other grounds. I don't think anybody's arguing he's not. Your Honor, he still would be inadmissible because he's been removed under removal order under 212A9. So for 10 years. So even if you, even if you say. Well, for 10 years, I agree with you. I'm not arguing that. Yes, no, but that would be, even if you found he's, let's just say that you reached the CIMT issue, write an issue, say it's not a CIMT, he's still inadmissible for 10 years. Yeah, I understand that. Unless he gets a waiver. So that is also. We all understand that. Okay, Your Honor. We all understand that. But the collateral consequences that flow from being a CIMT. That's right. From having this open, this is a lifetime ban. I mean, he knows wherever he is in El Salvador or wherever he is, he's going to know that he has a lifetime ban. Isn't that an adverse collateral consequence? Your Honor, if I may just take a moment on the lifetime permanent ban that seems to be prevalent in the court's. Well, that's what the statute says. The statute does not say that. The statute simply says he's inadmissible. There is no similar statute like the aggravated felony statute that you have found in other cases of a lifetime ban. Here, he could be out of the country for three years and he can seek to try and get a waiver for a CIMT. He would also need a waiver for his 10-year bar. He would need two waivers. But he could do that six months after he leaves the country. Is that a real possibility? Is that a real possibility? Your Honor, I don't. I mean, seek. Your Honor, you're asking me a question that's very speculative. Which is why you shouldn't have relied on it as a bona fide avenue of relief for Mr. Mayorga. We've seen enough cases to know that those are exceedingly rare. But I don't think that sheds any light on the legal question. You're not arguing this case is not judicial? I mean, we can decide it, right? The CIMT issue? You can. We would prefer that the board issue a decision so at least you can look at it and defer to it. Right. I would prefer that, too. I'm sitting where you're standing in that regard. But help us with this. Yes, Your Honor. Let's assume for a minute that we don't adjudicate the CIMT issue. Eleven years from now, after his 10-year period is up, he seeks to reenter the country. Explain to us how that litigation will proceed or administrative process will proceed. And I want you to assume that this Court has specifically said that the IJ's CIMT determination is of no effect because it's not essential to judgment. It has no collateral stoppable effect whatsoever. Tell us what would happen 11 years from now. Okay. It's difficult to say what would happen 11 years from now. Based on what we know now. Based on what we know, he would first have to get a way to enter the country. So he'd have to file, he'd have to get a visa, approved visa petition, and then he would have to get a visa. Okay. So assuming he was able to get all that, then he would go from the Counsel's Office, wherever he is, overseas. Then the Counsel would look on whether or not he's admissible to the United States. And if this, first he would look, if it's beyond 10 years, as you said, then he has no bar for the removability hearing and being removed on an order of removal. The only thing that would be left is the CIMT. And as this Court put that that CIMT has no effect on the admission. Then it doesn't impair him in any way. Then it should not. It should not impair him in any way. I mean, these decisions are made by one Counselor Officer in one location, don't know the experience level, don't know the nature. So those are very. And it could vary from country to country. It could. It could, Your Honor. So it's hard to say with any certainty that that would, in fact, happen as you progress it. Okay. It's very well that they may even, they may look at the CIMT finding and says, the Board didn't address it, don't look at it, we're not going to apply it. It's possible. I don't know if it's likely or not. Who knows, as in our last case, maybe the files are lost after all those years. But more likely, if you apply it in three years, they might not even look at the CIMT. They said, well, you have a removal order, so you need the waiver for that. It's just totally, totally, we have no idea what would happen. And what do you think we should do? I'm not sure. Well, Your Honor, if this Court wants a resolution on the CIMT finding, then I would recommend that they remand it to the Board with specific instructions to either address the CIMT finding or whether this offense is a CIMT finding in light of our decision in Totema and in Ali. And if it is, will that prohibit or they may very well find that it's not a CIMT based on this Court's decision. It may very well. It may very well. I agree with you, Judge Barry. It may very well say it's not a CIMT. So, meanwhile, then, Mr. Galuzzo sits here incarcerated for another two years when we know he's going to be shipped out of the country anyway. That's right. That was the reason. Well, that's why I posited earlier. That doesn't make much sense to me. Well, not necessarily. If he's going to be shipped out, he ought to be shipped out forthwith. But there's a stay in place, Your Honor. No, I know. Yes. But once we make our decision, that's when he gets shipped out, right? Well, unless you keep the stay in order. Well, but we know he's removable. Right. That's the point. Well, I guess what I'm asking is. He could immediately leave. He could say, okay, I'm ready to go. The Board would still address the CIMT issue. Why? It would be moot. No, it would not be moot. It would not be moot. It would not be moot. They could still address it. He could very well get out of confinement tomorrow and go back to El Salvador. We could cut an order saying we don't find this to be a CIMT and opinion to issue shortly. In ten years? No, there could be an application made for bail for him pending the issuance of an opinion. We've done that before. Because he's being held now, at least as long as our stay is in effect, in jail. Because it's a mandatory detention because of the CIMT. Your Honor, no, it's not because it's post-removal order. He has a removal order. I agree with you. If he was being held... He has a removal order because... Since the removal order... Okay, then you're right. You're right about that. Yes, you're absolutely right, Your Honor. If it was a 236 mandatory denial, yes, pre-removal order, yes. But here, it's post-removal order, so he can go tomorrow. What's the removal order for? Is it for the CIMT or because he's here illegally? It's for both. It's for both. That's a good point. It's for both. Okay. Thank you, Mr. McFarland. Thank you, Your Honor. Okay, now we'll get back... We may bring you back. That's fine, Your Honor. I'm hoping that's not necessary. Now that the dust has settled a little bit, Mr. McFarland, why don't you offer whatever you wish? I will repeat what I said before, which is... You want me to thank him again? Yeah, I want you to thank him again. You're welcome, Your Honor. Well, you know, I just first wanted to take a couple... Well, your office does... I mean, I must say that your office does take pro bono cases, and we as a court appreciate it. And when I used to sit in that chair, I used to say the same. David Fyne does a very nice job with the pro bono program at my office, and I'm very lucky that he offered me this case. Oh, good. Okay. So I wanted to quickly respond to a couple of things that the government mentioned there in their argument. The first thing is that I believe the government's position is that if this decision is left to stand, it would be accorded some sort of collateral estoppel effect. No, it would not. He said it would not. It would not? Right. Because it's not essential. It's not essential to the judgment. Okay. Well, I'm not sure if that's correct as a matter of law, though. I'm not sure, you know... Well, show me a case where something was not essential to the judgment and this court or another court of appeals or the Supreme Court said it still was entitled to collateral estoppel effect. Well, you know, in this case, I think that the BIA's decision, you know, relied as much upon this ground of removability as the other. Well, I... It doesn't matter. The BIA found no reason on any issue to disagree with the IJ, did not specifically address this issue, certainly didn't analyze it. It just dismissed the appeal. So... Let me try to explain why it's not essential to the judgment. Let's assume it's not a CIMT. Is your client still being removed? Yes, he is. That's why it's not essential. It's entirely ancillary. Now, here's where it's important, and the reason we have a ripe case for adjudication rather than a moot case is that if we were to hold that this is a CIMT, then your client is going to have much more difficulty gaining admittance after the 10-year period expires, correct? That is certainly true. You know, we can resolve this issue right now in this case or we can wait 11 years from now when Mr. Mayorga wants to get back in the country again and he's going to have to do this whole proceeding all over again. We don't know whether he's going to be able to obtain counsel in that proceeding. But he can't even try to do that until he gets a visa, right? We have many contingencies that must occur before he would get admission back into the country, correct? That's correct. But for the purpose of determining whether he's injured by what the agency has done, those things really don't matter. What's matter is that he is legally affected by the agency's decision now. All right, but if we write an opinion that says that CIMT determination of the IJ, which was not adjudicated by the BIA, has no preclusive effect whatsoever, then he's not harmed 11 years from now, correct? Well, that would be better than nothing, but he would still be harmed because he would still have to go through the additional hassle of trying to litigate that issue 11 years from now. Why would he have to litigate that? That was my last question to Mr. Nicastro. Was he incorrect when he said he would just show up at the consular office, he would apply and ask for a visa? I mean, I guess that there is a hypothetical chance that the government 11 years from now would say that's not a crime involving moral turpitude. But we don't know whether the government is going to take that position or not. They may 11 years from now, when he submits his application for admission, say, for instance, maybe you falsified your application because you haven't listed here that you committed a crime involving moral turpitude. And we believe as a matter of law, regardless of what happened now with the IJ's decision, the BIA, and the Third Circuit, that the underlying facts constitute a crime involving moral turpitude. Now, if we get a decision right now, he won't have to go through the uncertainty  If the Third Circuit decides he did not commit a crime involving moral turpitude, he will affirmatively not have to write on his application anything about, you know, a potential crime involving moral turpitude. So you're saying we should either decide that issue or, failing that, we should send it to the board with directions that it decide that issue and return the case to us? I'm saying that the court should decide it now. And I think that either a remand to the BIA or waiting into the future would both be much lesser forms of relief for my client. Could you just tell me a fact that I'd like to know? He has five children, three of his own and two extra ones. That's correct. Can he visit them at all now? Can he come back in to just visit? Well, at this point, my understanding is that he is in a jail in Alabama. So I believe that, you know, while his removal is staged... Assume that we get him out of the jail in Alabama and he's removed for one of the two reasons given. He's in El Salvador. Can he come back and visit his children? At that point, my understanding is no. He would not be able to be lawfully admitted to the country in any respect. Because there are adverse collateral consequences from the removal. Yes, that's correct. And it may depend on which grounds. That's definitely true, yes. I mean, there are clearly additional hurdles put in place by this CIMT determination if it's left to stand, in addition to the hurdles that he would face if he's just removed for the non-criminal grounds. Okay, suppose he's removed because he came in illegally. Can he come back occasionally to visit his children? He would need to apply for consent for readmission, which is based on a multi-factor test. And they probably would never give it. That's my understanding. He'd have a chance, but it'd be a long shot. Can he apply for adjustment of status based on his wife's citizenship? My understanding is that he's precluded from applying for adjustment of status at this point. Because he's here more than 60 days or some number of days. There are a number of statutory requirements to get adjustment of status, and I can't recall off the top of my head which ones he didn't meet. But that was an issue that we investigated, and we didn't think that he would be eligible. So, if we write an opinion adjudicating the CIMT issue, or if we remand it to the board to do so, is there any reason for us not to lift the stay? Well, yeah, I think that the stay should not be lifted while this litigation is ongoing. He's going to be removed no matter what we say or what the BIA says on the CIMT issue. So why shouldn't he be removed forthwith rather than during the pendency of a tangential issue that's not essential to the removal order? My understanding is that my client is still pursuing other avenues of relief at this moment. He's trying to exhaust them. He really doesn't want to leave this country. I believe that he has been trying to reopen his case before the Board of Immigration Appeals on the separate issues of asylum and cancellation of removal, perhaps. I've not been involved in that aspect of his case, but he's still looking for an avenue that would prohibit his removal altogether. Because he was pro se all the way up through the board. He did not have counsel until you've come in. That's exactly right. Okay. Do you want to tell us anything else? Sure. So, yeah, I also wanted to mention the fact, let's see here. Well, you know, there was some discussion about whether Mr. Mayerga had raised the issue before the Board of Immigration Appeals. Which issue? Had raised the CIMT issue. Well, it was adjudicated, so that can't be a problem for you, right? Yeah. I mean, Mr. Mayerga didn't do so clearly, but he definitely included language in his appeal to the Board of Immigration Appeals. He cited the provision, right? Yeah. He noted that he had a problem. 212A2IA1, right? Yeah. And the Board of Immigration Appeals affirmatively decided that he was not eligible for cancellation of removal because of his crime involving moral turpitude determination. So, you know, it's not like the BIA, you know, has completely whiffed on this issue. That's completely what? That they completely ignored the issue or that they didn't, you know, think about it whatsoever. They just didn't render a specific analysis. Well, they didn't give us a reason to adjudication, which is what we usually have the benefit of when we decide these cases, right? But the important thing here is that the agency, whether it be the IJ or the BIA, Well, that just means we have a live case, but that doesn't shed any light on whether it's prudent to remand it as opposed to adjudicating it. Mr. McFarland, which would you prefer? That we decide the CIMT issue or that it go back to the agency? I would decide that the Third Circuit render a decision right now. I mean, there is no reason to remand this case to the BIA. They had a full opportunity to render whatever opinion they wanted to on this issue, and they chose not to. Moreover, this is an issue of statutory interpretation, you know, at base. It goes beyond the immigration laws. Exactly, that this court is perfectly capable of handling. If there was a remand to the BIA, there would be no factual development. It would just be them looking at statutes, and that's exactly what you guys do best. Of course, then we are essentially deciding that issue on a one-sided presentation since we have nothing in writing from the government because they did not answer our order as to take a position on the CIMT issue. My guess is the government would file a response. I would think the government would be seeking to do, you know, to now respond on the merits of that issue. But we don't know. The government attorney was very candid in saying that he didn't know which way the government would argue the CIMT. Which way the agency would go, yeah. Well, the government, I mean, because if it comes to us. I kept trying to get a government position. My understanding is that in all past attempts, the government has argued that this particular crime does, in fact, constitute a crime involving moral turpitude. Well, that's what the lawyers argue. But the agency, you know, the judges in the agency may come to, as Mr. Nicastro said, they may conclude otherwise. But there's precious little experience with this statute and a CIMT at either the agency level or the court level. I would think that, just off the top of my head, I would think that either both sides would prefer to have a court decision rather than an agency decision because it's our job. That would provide additional clarity to the law as well. Well, Mr. Nicastro, do you want to address that? I'll give you a chance. You have to go to the microphone. We can hear you. I'm sorry. I'm very sorry, Your Honor. It's being recorded, that's why. Yes. The only reason I would say that it go back to the agency is because the agency may very well say it's not a CIMT based on Ali and based on this court's decision. That's a very reasonable position. And you may not appeal that to us. We can't. We would be done. Why can't you appeal that? We cannot appeal the agency's finding on a CIMT. Now, the Board could certify it to the Attorney General himself, but we cannot take appeal from that. That would be the end of it. You would not see it again. Why can't you take it? I'm amazed. Is it something peculiar to that CIMT statute? No, it's just peculiar to the INA in that we're not – I don't know if we have made a policy decision that we will not appeal any adverse ruling from the Board to the courts. Does that cover other things? Like if the Board were to say something is not an aggravated felony, et cetera, et cetera, you don't have the power to appeal any of those? No, Your Honor. So it's like Social Security appeals. When the government loses, you don't appeal. We lose because we defend the agency's decision. So the only way the government can really take a position is before a court, the government. In other words, if we were to say we are interested in this issue and we may write on it, we have not yet heard the government's position on it. You have 10 days within which to submit papers discussing the Ali case particularly because that's directly on point and our totem. And to state a position on the merits as to whether this crime constitutes a CIMT. Then there will be at least some government position. We could, Your Honor. We prefer that the agency look at the CIMT definition. And then if you don't like what they say, you're stuck with it then? We're stuck with it, absolutely. We're stuck with it. We're giving you a chance. I know, but I don't think my client would appreciate the court taking the initiative to write on this issue without them saying is it a CIMT or not? Because they may very well say it's not based on the case law that's out there. Yeah, I think that's right. Okay. Okay. Okay. It's a good time to back away from the microphone. I will. Thank you for being a trooper, Mr. Nicastro. Mr. McFarland, for the fourth time, I thank you and your firm for your kind pro bono assistance,  We'll take the matter under advisement.